UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOE THOMAS VALLEJO #193724 | CIVIL ACTION NO. 23-cv-1580 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| STEVEN PRATOR ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Joe Thomas Vallejo ("Plaintiff"), who is self-represented, filed this civil rights action against several defendants to complain about issues associated with his arrest and incarceration for prostitution and parole revocation. The court screened the original and amended complaints and dismissed some claims and defendants based on prescription, the Heck doctrine, and failure to state a claim based on loss of property. Docs. 6 & 8. The court allowed Plaintiff to proceed with his remaining claims against the remaining defendants. Doc. 7.

Before the court are a Motion for Summary Judgment (Doc. 18) filed by Caddo Parish Sheriff Henry Whitehorn and four Caddo Parish deputies, a Motion to Dismiss (Doc. 16) filed by two of those same deputies, and a Motion for Summary Judgment (Doc. 23) filed by Gary Westcott, the Secretary of the Department of Public Safety and Corrections. The motions urge a number of defenses, including untimeliness, failure to exhaust administrative remedies, and failure to state a claim on which relief may be granted.

The motions were noticed for briefing. Plaintiff was released based on time served and changed his address to a private address in Shreveport. Some notices that were mailed to Plaintiff at his custodial address were returned, but the clerk of court re-sent them to Plaintiff's new private address, and Plaintiff was also provided a copy of the docket sheet that reflected the first two motions. The third motion and the related notice were mailed to Plaintiff at his new address. All delays for opposing the motions have passed, and Plaintiff has filed nothing. For the reasons that follow, it is recommended that the motions be granted.

**The Allegations**

Plaintiff alleged in the original complaint that he was arrested in a prostitution sting and eventually booked into the Caddo Correctional Center ("CCC") for a charge of prostitution and for a parole violation hold. Plaintiff was classified as a homosexual, which placed him in the protective custody housing unit. He eventually accepted a plea deal for a misdemeanor charge of prostitution. He complained that, as a homosexual, he was placed in protective custody, and inmates in protective custody were not allowed to participate in certain programs that could assist in obtaining identification documents, strategies for reintegration after release, and the earning of good time credit. Specifically, he alleged that defendant Laura Fredieu, the CCC programs coordinator, denied his request to enroll in a reentry program and told him that she does not allow homosexuals to enroll or participate in any programs.

Plaintiff also alleged that he was retaliated against after he attempted to intervene on behalf of fellow inmate Lloyd Wright, an elderly man who was on pretrial detention for

violation of child predator laws and suffered from health problems and mistreatment by deputies. Plaintiff alleged that after he complained about mistreatment of Wright, Plaintiff was forced to move out of his cell, placed in lockdown, and soon transferred to another jail in Rayville.

The court ordered Plaintiff to provide additional facts regarding his claims. Doc. 4. Plaintiff filed a response (Doc. 5) that was titled Motion to Amend Complaint/Petition. He complained that filings he attempted to mail in connection with a Bossier Parish parole revocation case were delayed, that someone in the Caddo Sheriff's Office prevented his mailing of various reports of constitutional violations, and that the Caddo Sheriff and his deputies wrongfully prohibited homosexuals from participating in programs. Plaintiff also faulted the Secretary of the Department of Public Safety and Corrections for the alleged implementation of the wrongful policies that led to the denial of his participation.

**Timeliness and Exhaustion Defenses**

    **A.  Introduction; Burdens**

The moving defendants assert a number of defenses, including timeliness and failure to exhaust administrative remedies prior to bringing suit. The exhaustion requirement is based on the provision in 42 U.S.C. § 1997e(a) which provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

Failure to exhaust is an affirmative defense, Jones v. Bock, 127 S.Ct. 910 (2007), and a defendant "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). The undersigned has explained many times that, in light of the burden, the exhaustion defense is best presented by a motion for summary judgment that is supported by an affidavit from the official who administers the ARP system. See, e.g., Green v. Whittington, 2024 WL 4343544, *4 (W.D. La. 2024); Stephens v. Prator, 2017 WL 3775953, *2 (W.D. La. 2017). That official should testify about the existence and terms of the ARP plan in place at the relevant time, attach certified copies of any filing that the prisoner did make (together with responses thereto), or certify that a diligent check of the record revealed no filing by the prisoner with respect to the claims at issue. In this case, the Caddo defendants present certified copies of the grievances and responses, but there is no evidence about the terms of the ARP plan in place at the relevant time, the steps required to exhaust, time limits, or the like.

As for timeliness, Congress did not provide a statute of limitations for claims brought under 42 U.S.C. § 1983, and the Supreme Court has held that a forum state's general or residual statute of limitations for personal injury claims applies. In Louisiana that period was one year at the time Plaintiff's claims arose. Haygood v. Morrison, 116 F.4th 439, 445 (5th Cir. 2024).[1]

---

[1] Louisiana now has a two-year prescription period for torts, but this new provision only applies to actions arising after July 1, 2024. Allied World Nat'l Assurance Co. v. Nisus Corp., 2025 WL 1145728, n. 3 (5th Cir. 2025)

The time at which a Section 1983 claim accrues is a question of federal law, which means that a plaintiff has one year from the time he becomes aware that he has suffered an injury or when he has sufficient information to know he has been injured. Stringer v. Town of Jonesboro, 986 F.3d 502, 510 (5th Cir. 2021); Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001). Untimeliness is also an affirmative defense, which places the burden of proof on the defendants who are asserting it. F.T.C. v. Nat'l Bus. Consultants, Inc., 376 F.3d 317, 322 (5th Cir. 2004).

### B. Date the Complaint Was Filed

One issue regarding timeliness is the date Plaintiff filed his complaint. Defendants argue that Plaintiff filed his complaint on November 2, 2023, when the clerk of court stamped it received. But Plaintiff was incarcerated at Bossier Medium Security when he filed his complaint, so he is entitled to the benefit of the prisoner mailbox rule. Under that rule, the date upon which an inmate places a legal document into the hands of jail authorities for mailing is the operative date for filing purposes. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). There is no summary judgment evidence of when Plaintiff tendered his complaint to Bossier officials for mailing, but it was signed and dated October 21, 2023, so the court will assume, in the absence of evidence from the defendants to the contrary, that October 21, 2023 is the tender/filing date.

### C. Date Claims Accrued

The next question regarding timeliness is when Plaintiff's claims accrued to trigger the running of the one-year limitations period. His primary claim at issue is the denial of his application to participate in certain programs. Plaintiff filed a grievance on August 25,

2022 that complained he was denied participation in the reentry programs due to his protective custody status, and he contended that the denial was a violation of the constitutional guarantee of equal protection. Plaintiff was plainly aware by the time he filed the grievance that he believed that he had suffered an injury based on those allegations. The limitations period for claims related to the denial of program participation commenced no later than August 25, 2022. Plaintiff filed his grievance about retaliation on September 20, 2022, so the limitations period for the retaliation claim commenced no later than that date. Both of those dates are more than one year before Plaintiff filed his judicial complaint on October 21, 2023.

### D. Tolling by ARP

Plaintiff's filing of his complaint past the one-year anniversary dates on which his claims accrued does not necessarily mean that his claims are untimely. A prisoner may not file his suit until he exhausts his administrative remedies, so the prescriptive period is tolled while an administrative grievance is pending. Harris v. Hegmann, 198 F.3d 153, 158-59 (5th Cir. 1999). This requires a review of the grievances that Plaintiff filed to assess whether (1) any of them tolled the limitations period long enough to render a claim timely and (2) whether Plaintiff properly exhausted his administrative remedies with respect to any timely claim asserted against the remaining defendants.

### E. First Grievance

The summary judgment evidence shows that Plaintiff filed four grievances (also known as administrative remedy procedures or ARPs) while housed at CCC. The first, filed July 27, 2022, complained about his access to a tablet and the law library, which he

claims amounted to denial of his constitutional right to access the courts. CCC official responded, but Plaintiff wrote on August 5, 2022, "Please close this out so I can file an ARP. This no longer is an issue. I'm in a different pod." When Plaintiff withdrew this grievance, it became as if it had never been filed, so it neither tolled the limitations period nor exhausted any claim. Hickson v. Haulcy, 2024 WL 875825, *3 (W.D. La. 2024) (withdrawal of grievance is equivalent to dismissal without prejudice; it's as if the action was never filed). No timely claim against any defendant may be based on this grievance.

### F. Second and Third Grievances

Plaintiff filed a second grievance on August 25, 2022 to complain that his status as a protective custody inmate meant that he was unable to enroll in reentry programs that would assist in obtaining housing and identification. A CCC official responded on September 6, 2022 that inquiry was made to the program's manager, and the manager explained that protective custody inmates could not be allowed around general population inmates to participate in person in the program. The manager offered to bring Plaintiff some program materials to work on in relation to the classes.

There is no indication of any appeal by Plaintiff, and the ARP report states: "Resolved without Appeal." Defendants have not presented evidence of the grievance steps and the deadlines for filing/responding, but the court is aware from other cases that at least a two-step process has been in place at CCC in recent years. See, e.g., Johnson v. Rogers, 2015 WL 4395350, *1 (W.D. La. 2015) (certified copy of the Inmate Handbook provided prisoners at CCC included provisions for a two-step administrative remedy

procedure). Thus, this grievance (1) at best tolled the limitations period for the 13 days it was pending and (2) did not exhaust a claim because no appeal was pursued.

On September 7, 2022, the day after the second grievance was resolved, Plaintiff filed a third grievance. He complained that he was wrongfully placed in protective custody at booking. Plaintiff stated that he reasonably requested to be taken off protective custody because he was "safe anywhere I go" and wanted to be able to enroll in programs. He also wrote, "This is my step 2." CCC officials responded on September 8 and 19, 2022 that this new, separate grievance was an inappropriate effort to pursue a second step review with respect to the prior grievance. They wrote, "This is not how the grievance process goes in order to move forward to a second step," and added that Plaintiff would remain in protective custody throughout the duration of his stay at CCC. The grievance was noted to have been, "Rejected without Appeal." Thus, this procedurally improper grievance (1) at best tolled the limitations period for the 13 days it was pending and (2) did not exhaust a claim because no appeal was pursued.

If the second and third grievance are treated as having tolled the limitations period for the 26 total days they were pending, the complaint is still untimely with respect to the claim of denial of program participation. The deadline for Plaintiff to file his judicial complaint regarding the denial of program participation claim was one year from accrual of that claim, or (Friday) August 25, 2023 (absent tolling). Adding 26 days would extend the filing deadline to no later than (Thursday) September 21, 2023. Plaintiff did not file his complaint until October 21, 2023, more than a month past the extended deadline. His

complaint is therefore untimely with respect to all claims based on program denial, and this ARP process did not toll or exhaust with respect to any other claims.

### G. Fourth Grievance

Plaintiff filed a fourth and final grievance on September 20, 2022 to complain that Deputy Herring (not a defendant), the housing director for the protective custody unit, retaliated against Plaintiff for various reasons, including his complaints filed on behalf of fellow inmate Lloyd Wright. The lengthy submission described several events, but all were concerning Deputy Herring. Plaintiff requested that Herring be assigned to another housing unit and be disciplined. He later asked to add to the grievance a complaint that Herring did not honor his request for a washcloth.

CCC officials responded that a grievance could not address multiple complaints and asked Plaintiff to clarify the one specific complaint that he would like to have addressed. He was also told that he could not submit a grievance on behalf of another inmate. Plaintiff was transferred from CCC on September 23, 2022, just three days after this grievance was filed. A CCC official noted in the grievance record on September 26, 2022 that Plaintiff "was released before submission was received." The grievance was described as, "Resolved without Appeal."

Some ARP plans include provisions regarding what released inmates need to do, if anything, to exhaust a claim. See, e.g., Hanna v. Bossier Par. Corr. Ctr., 2014 WL 2807647, *3 (W.D. La. 2014), affirmed, 624 Fed. Appx. 186 (5th Cir. 2015). Defendants have not provided evidence of what their plan provides. Thus, it is not possible to determine with any degree of certainty whether Plaintiff's release amounted to exhaustion of this grievance

or if Plaintiff had a continuing obligation after his transfer to a new correctional facility to complete the CCC ARP process. In any event, it does not matter because this fourth grievance complained solely about actions allegedly committed by Deputy Herring, and she is not a named defendant in this action.

An inmate's "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones v. Bock, 127 S.Ct. 910, 923 (2007). To properly exhaust, the grievance must provide prison administrators with a fair opportunity under the circumstances to address the problem that later formed the basis of this suit. See Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). There was nothing in the fourth grievance, which was directed solely at Deputy Herring and her alleged actions, that would have alerted CCC officials to investigate or address the conduct of any of the named defendants in this civil action for any actions alleged in the judicial complaint. Accordingly, the final grievance did nothing to toll the limitations period or exhaust administrative remedies with respect to any claim presented in Plaintiff's complaint.

**Secretary Westcott**

The reasons set forth above are sufficient to recommend dismissal of the claims against Secretary Westcott, but he also asserts other defenses, including a lack of allegation of any personal involvement in the alleged misconduct. The genesis of Plaintiff's claims against Westcott is that his original complaint named as a defendant James LeBlanc, who was then the Secretary of the Department of Safety and Corrections. The allegations in the complaint did not mention LeBlanc until page eight, where he was listed along with Parole Agent Thomas and some John Doe probation and parole officers. Plaintiff alleged that

Thomas discriminated against him because of his sexual orientation. The court previously dismissed the claims against Thomas as untimely.

Plaintiff's response to the court's request that he expand upon his claims complained that CCC would not allow inmates in the protective housing unit to participate in certain programs. He added an allegation the Secretary LeBlanc was involved in the implementation of those policies in correctional centers that housed DOC inmates. Doc. 5, pp. 3-4. When Plaintiff submitted service papers, he wrote that "Secretary James LeBlanc needs to be amended to Gary Wescott," but he offered no additional allegations against Westcott.

To state a cause of action under Section 1983, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). Secretary Westcott argues that, based on the summary judgment record, there is no evidence that he implemented an unconstitutional policy at CCC or otherwise personally participated in preventing Plaintiff from enrolling in any programs at the parish jail. Westcott has shouldered his initial summary judgment burden of identifying what he contends is the absence of a genuine dispute of material fact with respect to a particular element of Plaintiff's claim, so the burden then falls upon Plaintiff to demonstrate the existence of such a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986). Plaintiff has not responded to the motion, so he did not meet his burden, and Secretary Westcott is entitled to summary judgment with respect to all claims against him based on both the timeliness defense discussed above

and the lack of evidence of his personal involvement in the denial of program eligibility at CCC.

**Earl Hawthorn and Sabrina Raborn**

The reasons set forth above are sufficient to recommend dismissal of the claims against Earl Hawthorn and Sabrina Raborn, but these two defendants also filed a Motion to Dismiss (Doc. 16) on the grounds that Plaintiff has not stated a claim against them on which relief may be granted. To avoid dismissal, Plaintiff's complaint must plead enough facts to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Pro se complaints are held to less stringent standards, but even they may not rely on mere conclusory allegations to prevent the granting of a motion to dismiss. Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

It does not appear that Plaintiff mentioned Earl Hawthorn or Sabrina Raborn in his original complaint or his response to the court's order that he provide additional details. The first mention of their names on the docket sheet is in the summonses that Plaintiff submitted for service. One summons is addressed to "Capt. Hawthorne" and another is addressed to "Ms. Rayburn" at CCC. Plaintiff has not responded to the challenge that his complaint lacks sufficient allegations against these two defendants, and the court sees no basis for a plausible claim against either of them. Accordingly, both of these defendants are entitled to dismissal based on both untimeliness as discussed above and for failure to state a claim on which relief may be granted.

Accordingly,

IT IS RECOMMENDED that the Motion for Summary Judgment (Doc. 18) filed by Caddo Parish Sheriff Henry Whitehorn and four Caddo Parish deputies, the Motion to Dismiss (Doc. 16) filed by Earl Hawthorn and Sabrina Raborn, and the Motion for Summary Judgment (Doc. 23) filed by Gary Westcott, the Secretary of the Department of Public Safety and Corrections, be granted and that all claims against all remaining defendants be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of May, 2025.

Mark L. Hornsby
U.S. Magistrate Judge